UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-80033-CR-MIDDLEBROOKS

**UNITED STATES OF AMERICA,**

vs.

**BARRY GREGORY,**

_____Defendant
_____/

**DEFENDANT'S OBJECTIONS TO
PRESENTENCE INVESTIGATION REPORT**

Defendant Barry Gregory ("Gregory"), through undersigned counsel, hereby files this his Factual and Legal Objections to the PSR, and as grounds, states the following:

**PART A: THE OFFENSE**

The following factual objections are made to each of the paragraphs indicated herein:

¶¶ 65-67:  The reference to "co-conspirators" does not include the conduct of Gregory.

¶ 83:  Gregory was hired to serve as the Clinical Director of Reflections *and* Journey to Recovery.

¶ 85:  Add: Gregory was interviewed by law enforcement in his home on or about October 28, 2106, and met with the Government on November 1, 2016. Gregory remained employed by Chatman until November 9, 2016, when he was fired by Chatman (see ¶ 189 of PSR).

¶ 86:  Add: Gregory did not know Chatman operated *sober homes* until after he was terminated by Chatman in November 2016.

¶ 87:  Add: Gregory told Chatman that he should seek advice of counsel because such

payments to sober home owners seemed improper, but Chatman ignored him.

¶ 94:  Gregory knew about medically unnecessary drug testing, but did not know at the time whether the latter "treatment" was unnecessary.

¶127:  Gregory did not prescribe laboratory testing; rather, he would "close out" charts by electronically signing that the laboratory test results were reviewed.

**Offense Level Computation**

The following legal objections are made:

¶ 139:  Gregory objects to imposition of the enhancement under §2B1.1(b)(15)(A) that the offense involved the *conscious or reckless risk of death or serious bodily injury*. First and foremost, the parties did not contemplate this enhancement in plea negotiations, and it is simply not applicable – nor has it been applied to similarly-situated co-defendants involving Chatman. Importantly, numerous Guidelines provisions turn on the actual consequences of the defendant's "offense." In this case, the offenses for which Gregory entered a guilty plea (conspiracy to commit health care fraud and false statements relating to health care matters) did not involve the reckless risk of death or serious bodily injury. There are no facts agreed to by Gregory which indicate that his actions, in concert with others, involved the risk of death or serious bodily injury to others. In fact, as shown below, the facts indicate the contrary – Gregory was a clinical director assisting in the care of patients addicted to narcotics. This is not a case of a defendant staging accidents, for which this enhancement most often applies. *See U.S. v. Hoffman*, 9 F.3d 49, 50 (8th Cir. 1993).

¶ 141:  Gregory objects to imposition of the enhancement under §3B1.3 that defendant abused a position of public or private trust. The Government has taken the position that this

2

enhancement applies, but has allowed Gregory to argue that it does not. This enhancement applies to situations where the position of public or private trust contributed in some significant way to facilitating the commission of the offense. While it is true that Gregory assisted Chatman in having his facilities licensed, and that he served as a consultant and clinical director, there are no facts that his position, in fact, contributed in a significant way to facilitating the commission of the offense against particular victims.[1] Furthermore, this is not a case where a doctor or counselor has the unique ability to bill insurance companies. In those situations, courts generally agree that the enhancement applies. Yet, there is no evidence that Gregory handled or even assisted in insurance billing. Second,,it is clear from the Factual Proffer that Gregory was not a medical doctor. (¶20 of Factual Proffer). He did admit that as clinical director, he was responsible for supervising clinical services, including regularly reviewing the work performed by subordinate employees. (¶21 of Factual Proffer). But it is also clear that: "Instead of defendant Gregory using his clinical expertise and his individual assessments of patients to decide what type of treatment and laboratory testing was needed by each patient, *Kenneth Chatman dictated which patients were admitted and discharged and the type of lab testing that would be performed . . .*" (¶26 of Factual Proffer).

The PSR also indicates several facts that show that despite Gregory advising Chatman to change his course of action, Chatman refused to do so. Hence, factually Gregory's position did not serve to facilitate (in a significant way) the commission of the offense of health care fraud as to particular victims. The PSR indicates the following:

---

[1] The term "victim" in this case applies to the patients of Chatman's facilities, and not the insurance companies. For that reason, Gregory agreed that the vulnerable victim enhancement applied under § 3A1.1(b)(1) [¶ 140, PSR].

¶ 58:   **"Kenneth Chatman would overrule the advice of Barry Gregory."**

¶ 87:   Fact that should be added: "Gregory told Chatman that he should seek advice of counsel as such payments to sober home owners seemed improper, but Chatman ignored him."

¶ 89:   "On most occasions, Gregory and clinical staff simply allowed the behavior [condoned by Chatman] to continue. On other occasions, Gregory would recommend referring relapsed patients to detox facilities that would truly assist the patients in achieving sobriety."

Therefore, factually, Gregory's role in this conspiracy is not akin to holding a position of trust with respect to either insurance companies, or patients.   In reality, the way this conspiracy worked was that Chatman had full control and authority over patient care, and he personally directed patient care, patient drug testing, and any other aspect of the conspiracy, and if Gregory or others disagreed, they were overruled.  These facts are made clear in the Factual Proffer and the PSR.

Therefore, adjusted for these objections, the Total Offense Level Should be 23, with a Criminal History Category of I, resulting in an Advisory Guideline Range of *46 to 57* months.

**PART D:   SENTENCING OPTIONS**

¶ 210: Gregory objects and argues that based on a total offense level of 23 and a criminal history category of I, the guideline imprisonment range is 46 to 57 months.

In determining a fair and just sentence in this case, this Court is requested to consider the *Booker* decision and the Section 3553(a) sentencing factors that would justify a variance from the current advisory guideline calculation.  Gregory is filing a Sentencing Memorandum in that regard, to support a variance, along with letters of support.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing has been furnished to Ann Marie Villafana, by filing with CM/ECF, on this 21st day of April, 2017.

        Respectfully submitted,

        /s/ *Valentin Rodriguez*

        _____
        VALENTIN RODRIGUEZ, ESQ.
        Valentin Rodriguez, P.A.
        120 S. Dixie Highway, Suite 204
        West Palm Beach, FL 33401
        (561) 832-7510
        (561) 537-7050 (facsimile)
        Fla Bar No.  047661

        Counsel for Defendant Gregory