UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   17-80033-CR-MIDDLEBROOKS/BRANNON

UNITED STATES OF AMERICA

v.

BARRY GREGORY,

    Defendant.
_____/

**RESPONSE TO DEFENDANT'S OBJECTIONS TO
THE PRESENTENCE INVESTIGATION REPORT (DE18)
AND DEFENDANT'S REQUEST FOR VARIANCE (DE19)**

    The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this Response to Defendant Barry Gregory's Objections to the Presentence Investigation Report (DE18) and his Sentencing Memorandum, which includes a request for a downward variance (DE19).   The factual objections will be addressed in turn, and for the reasons set forth below, the United States opposes the requested variance.

**The Factual Objections**

    Gregory objects to facts contained in paragraphs 65-67, 94, and 127, and seeks to add information to paragraphs 85-87.

    ¶¶ 65-66:   The government agrees that Gregory was not involved in the human trafficking activities that were occurring and has no information that Gregory knew about those activities, which were taking place at the sober homes, not at Reflections Treatment Center or Journey to Recovery.

    ¶ 67:   The government agrees that Gregory did not threaten violence or confiscate belongings or medications.   Gregory was aware that Kenneth Chatman and others engaged in that

activity.

¶ 83:   The government agrees with Gregory's correction.

¶ 85:   The government has no objection to adding the text requested by Gregory.

¶ 86:   The government disagrees with Gregory's addition.  In his factual proffer, Gregory admitted:  "Kenneth Chatman and other co-conspirators, including Fransesia Davis, owned and operated a series of 'recovery residences,' also known as 'sober homes.'  The defendant was aware that Kenneth Chatman was the true owner of some of these sober homes, but they were placed in other people's names in an attempt to hide Chatman's true ownership and control over the businesses."  (DE9 at ¶ 24.)   Furthermore, there were press reports of Chatman's sober home ownership at least as early as December 2015, nearly a year before Gregory stopped working with Chatman.  Gregory knew that Chatman hid his true ownership of Reflections and Journey by listing his wife, Laura Chatman, as the owner, so it was not surprising that Chatman did the same in connection with his ownership of sober homes.

¶ 87:   The government disagrees with Gregory's addition.  While Gregory has asserted that he told Chatman to consult with counsel, Gregory was aware of the kickbacks and bribes and continued to work at Reflections and Journey despite that knowledge.  (*See also* DE9 at ¶¶ 24-25.)

¶ 94:   The government disagrees with Gregory's addition.  As the Clinical Director of Reflections and Journey, Gregory was responsible for overseeing the counseling aspects of the substance abuse treatment.  Gregory knew that the treatment was inadequate.  In his factual proffer, Gregory admitted:  "The defendant knew, based upon drug test results, patient statements, and observation, that Reflections and Journey patients were continuing to use controlled

2

substances and that Kenneth Chatman was advising patients that they were allowed to continue using controlled substances.  On most occasions, the defendant and clinical staff simply allowed the behavior to continue.  . . . Gregory estimated that as many as 90% of the patients continued to use controlled substances while purportedly obtaining treatment."  (DE9 at ¶ 27.)  Gregory further admitted that "[i]n many instances, the sober residents did not attend the purported treatment sessions at Reflections and Journey . . . On some of these occasions, co-conspirators would forge patients' signatures on sign-in sheets to make it appear as though absent patients had attended treatment . . .  Members of the clinical staff would 'cut and paste' to create treatment notes that made it appear as though the absent patients were present.  As Clinical Director, the defendant reviewed the treatment notes that were prepared by other clinicians and was aware that duplicative notes were included in multiple patient files."  (*Id.* at ¶ 29.)  Treatment sessions that were not attended and were not for the purpose of getting patients to stop using drugs were "medically unnecessary."

¶ 127:  The government disagrees with Gregory's correction.  Electronic medical files obtained from Reflections' electronic medical storage provider contain medical necessity statements, lab testing prescriptions, and lab test results bearing Gregory's signature.  While Gregory may have electronically signed these prescriptions and other electronic records "after the fact" in order to close out the files, the records were maintained to support insurance billings.  Accordingly, Gregory admitted in his factual proffer:  "To conceal the fact that these [lab] tests were not medically necessary, defendant Gregory signed "medical necessity statements" after the fact that falsely stated that the testing was needed, that defendant Gregory reviewed the test results, and that the tests were used to direct the course of the patients' treatment, despite the fact that he

was not a medical doctor and had no authority to prescribe lab testing.  . . . Gregory knew that insurance claims for the medically unnecessary tests that he prescribed would be submitted to the patients' insurance companies."   (DE9 at ¶ 28.)

¶ 139:   The government agrees that the conscious or reckless risk of death enhancement was not contemplated in the plea agreement.

¶ 141:   The defendant has withdrawn his objection to the special skill/abuse of trust enhancement.  The government notes that Gregory had advanced degrees that qualified him to serve as Clinical Director and as a consultant hired to assist with obtaining licenses for Reflections Treatment Center and Journey to Recovery.  Reflections, Journey, and the Chatmans could not legally operate without a Clinical Director or the licenses that Gregory helped them achieve.  Also, as Clinical Director, he was responsible for supervising the clinical services at Reflections and Journey, including screening, assessment, placement, treatment planning, counseling, and case management.  As Clinical Director and a Certified Licensed Mental Health Counselor, Dr. Gregory owed a duty of care and a duty to provide honest services to the patients at Reflections and Journey.  Accordingly, the Probation Office properly applied the special skill and abuse of trust enhancement.

## Request for Variance

Gregory also requests that the Court vary from the advisory guideline range of 57-71 months' imprisonment based upon the factors set forth in 18 U.S.C. § 3553(a), including his family circumstances, the circumstances of the offense, and his past history of service and employment. For the reasons set forth below, the government believes that a sentence within the advisory guideline range is appropriate.

### a. The 3553(a) Factors

Applying the factors set forth in § 3553(a) results in a recommendation of 57 months' imprisonment, which is at the low-end of the advisory guideline range as currently calculated. Although the Eleventh Circuit does not "automatically presume a sentence within the Guidelines range is reasonable, [they] ordinary expect a sentence within the Guidelines range to be reasonable." *United States v. Hunt*, 526 F.3d 39, 746 (11th Cir. 2008).

The nature and circumstances of this offense require a significant sentence and weighs in favor of a sentence in excess of 57 months. Gregory and his co-conspirators placed their personal wealth above the life and welfare of young, vulnerable, patients and residents who were attempting to recover from drug addiction. There were several fatal and non-fatal documented overdoses of Reflections patients while Gregory served as Clinical Director, including one fatal overdose that was reported in the press. Gregory was aware that as many as 90% of Reflections patients continued to use drugs and Chatman allowed the patients to continue using drugs. Gregory knew that Chatman was forbidden from owning a treatment facility because of his criminal history and helped Chatman to hide his ownership and obtain a license. Gregory also was aware that Chatman had no concern for the wellbeing of the patients. Gregory alleges that he tried to bring problems to Chatman's attention and Chatman overruled him. Gregory knew that Chatman should have played no role in these clinical and medical decisions –Chatman had no medical or clinical training, and was not legally authorized to play any role in the care of patients. Yet Gregory never reported any of these issues to the Department of Children and Families (the agency tasked with licensing substance abuse treatment providers) or to law enforcement despite having a legal obligation to

5

file "incident reports" with DCF.

The history and characteristics of the defendant, specifically his non-existent criminal history, the alcoholism of his parents, and his marital stress, may weigh in favor of a lesser sentence. It should be noted, however, that unlike some of his co-defendants, Gregory is highly educated and has extensive experience that provided him with opportunities to earn a good salary without resorting to this offense.

The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment weigh heavily in favor of an above-guideline sentence. Gregory was participating in a virtually industry-wide scheme to defraud insurance companies at the expense of patient health and safety. Laws that were put in place to address the heroin and opioid crisis – namely, the Affordable Care Act and the Mental Health Parity and Addiction Equity Act – which made substance abuse treatment affordable and available to virtually everyone – were, instead, turned into a treasure trove for unscrupulous sober home owners, treatment facility providers, and labs, including these defendants.

The effect on the insurance industry – and, hence, on persons and businesses trying to buy insurance – has been devastating. One measurable effect was Cigna's decision to leave the Florida ACA insurance exchange because of "an exponential increase in fraudulent and abusive" substance abuse treatment practices.

The crime also has resulted in fatal and non-fatal overdoses throughout Palm Beach County sometimes more than ten a day. These practices harm young adults whose ability to protect themselves has been eroded by their addictions and whose parents have placed trust in sober homes and treatment facilities that advertise themselves as places that will heal their children. When

harm is directed to a group of defenseless citizens, it weighs in favor of a significant sentence. *Cf. United States v. Lichtman*, ___ F. App'x ___, 2017 WL 1192199, *5 (11th Cir. Mar. 31, 2017).

While Gregory asserts that he was paid only a salary from Reflections and Journey, he received consulting fees for helping the Chatmans receive a license and served as a consultant for other entities within this industry.

The need to afford adequate deterrence also weighs in favor of an above-guideline sentence. The Chatmans made several million dollars and the labs billed tens of millions of dollars for defrauding these insurance companies and taking advantage of these patients. Fraud schemes, in particular, lend themselves to potential defendants conducting a "cost-benefit analysis" and, hence, to general deterrence. If a defendant knows that he can make multi-millions in exchange for a risk of spending only a short time in prison, then the cost-benefit analysis weighs in favor of committing the fraud. Health care fraud in general, and health care fraud that endangers the lives of patients in particular, must be deterred through the imposition of adequate prison terms.

According to the Eleventh Circuit, "general deterrence is an important factor in white collar cases, where the motivation is greed . . . we have set aside sentences of little or no imprisonment because they do not constitute just punishment for the offense, do not promote respect for the law, and will not do much to deter similar criminal activity by others." *United States v. Hayes*, 762 F.3d 1300, 1308 (11th Cir. 2014). A light sentence conveys the message that "would-be white-collar criminals stand to lose little more than a portion of their ill-gotten gains and practically none of their liberty," and accordingly do not constitute just punishment or promote respect for the law. *Id.* at 1310-11.

The Eleventh Circuit also found a sentence of time-served unreasonable in a health care fraud case because the defendant:

> did not receive so much as a slap on the wrist – it was more like a soft pat. . . . Such a sentence fails to achieve an important goal of sentencing in a white collar crime prosecution – the need for general deterrence. . . .
>
> Insurance companies must rely on the honesty and integrity of medical practitioners in making diagnoses and billing for their services. And as the government indicated at oral argument, deterrence is an important factor in the sentencing calculus because health care fraud is so rampant that the government lacks the resources to reach it all. Thus, when the government obtains a conviction in a health care fraud prosecution, one of the primary objectives of the sentence is to send a message to other health care providers that billing fraud is a serious crime that carries with it a correspondingly serious punishment.
>
> . . . [The defendant's] sentence sends the opposite message—it encourages rather than discourages health care providers from engaging in the commission of health care fraud because they might conclude that the only penalties they will face if they are caught are disgorgement and community service.

*United States v. Kuhlman*, 711 F.3d 1321 (11th Cir. 2013). The Court explained that Congress also felt that general deterrence was highly relevant in white-collar cases: "'the Congress that adopted the § 3553 sentencing factors emphasized the critical deterrent value of imprisoning serious white[-]collar criminals, even where those criminals might themselves be unlikely to commit another offense.' . . . 'Because economic and fraud-based crimes are more rational, cool and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence.' [Congress'] basis for this determination was that '[d]efendants in white [-] collar crimes often calculate the financial gain and risk of loss, and white[-]collar crime therefore can be affected and reduced with serious punishment.'" *Id.* at 1329.

The need to protect the public from further crimes of the defendant weighs against a lengthy prison term. Gregory is unlikely to re-commit the crime of conviction, he has given up his license

8

to provide counseling, and he does not have a criminal history that signals a likely commission of other crimes.

The remaining factors are neutral, and, while the defendant has not yet completed his cooperation, he has fully accepted responsibility, recognized his wrongdoing and shown true remorse, and assisted significantly in the investigation.

Thus, the combination of the factors above, on balance, suggest that 57 months' of imprisonment is a reasonable sentence that adequately takes into account the true nature of the crime and this defendant.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By:   s/*A. Marie Villafaña*
A. MARIE VILLAFAÑA
Assistant United States Attorney
Florida Bar No. 0018255
500 South Australian Avenue, Suite 400
West Palm Beach, FL 33401
Telephone: 561 820-8711
Facsimile: 561 820-8777
ann.marie.c.villafana@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 25, 2017, I electronically filed the foregoing document with the Clerk of the Court and served the document via CM/ECF.

s/*A. Marie Villafaña*
A. MARIE VILLAFAÑA
Assistant United States Attorney